# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

CHELENE BAKER, et al.,      )
                             )
      Plaintiffs,     )
                             )
v.                          )      Civil Action No. 13-00641-KD-N
                             )
HAFEZ CORPORATION d/b/a    )
MCDONALDS,           )
                             )
      Defendant.    )

## REPORT AND RECOMMENDATION

The defendant's motion to dismiss or, alternatively, to sever and motion for a more definite statement (Doc. 4), filed pursuant to Rules 12(b)(6), 12(e), and 21, has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2, for entry of a report and recommendation. The plaintiffs have responded (*see* Doc. 13). And the defendant has filed a reply in support (*see* Doc. 11).

After consideration of the pleadings, and for all the reasons explained herein, it is **RECOMMENDED** that the motion (Doc. 4) be **GRANTED IN PART** and **DENIED IN PART**.

Specifically, it is **RECOMMENDED** (1) that the second and third claims for relief (pursuant to 42 U.S.C. § 1981 and for negligence/wantonness, under Alabama law, respectively) be **DISMISSED with PREJUDICE**; (2) that, as to the first claim for relief (for national origin discrimination, pursuant to Title VII), the Court find the plaintiffs have not administratively exhausted any claims other than those for

disparate pay, which precludes jurisdiction over those (the non-exhausted) claims; and (3) that, also as to the first claim for relief, the motion to dismiss be **DENIED**, but that the Court order the remaining plaintiffs—those who have filed an EEOC charge—to file an amended complaint asserting a claim under Title VII that complies with Rules 8 and 10, as explained herein, for disparate pay (the alleged discriminatory action) because of national origin (the alleged discriminatory basis).

It is further **RECOMMENDED** that the defendant's alternative motion to sever be **DENIED**.[1]

## I. Applicable Background

Twenty plaintiffs, employees of Defendant Hafez Corporation (d/b/a McDonalds), have filed a three-count complaint "aris[ing] under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C.A. § 1981." (Doc. 1, ¶ 1.) Underpinning their alleged harm is the contention they were discriminated against by their employer on the basis of national origin. (*See, e.g., id.*, ¶ 10 ("Hafez Corporation gave promotions, advancement opportunities, better pay, higher starting pay, and better conditions at work[] based on national origin, and said policy was discriminatory against Plaintiffs[] . . . ."); ¶ 17 ("National origin was a factor in recruiting, hiring, training, pay, job assignments, leave, benefits,

---

[1]  Although the motion is captioned as, also alternatively, one for a more definite statement and Rule 12(e) is invoked (once), such alternative relief is not truly discussed therein.  To the extent relief under Rule 12(e) is separately sought, however, the undersigned's finding that only a Title VII claim for discrimination in the form of disparate pay on the basis of national origin survives, and recommendation that a corresponding amended complaint be filed, should alleviate the need for a more definite statement.

promotions and other actions concerning the conditions of work and Plaintiffs[] were adversely impacted.").) Although pay is mentioned, the complaint alleges (very generally) a very broad practice of discrimination (or preferential treatment for employees other than the plaintiffs) on the basis of national origin. (*See id.*, ¶¶ 9-17.)

In addition to separate claims under Title VII and § 1981, the plaintiffs allege a claim for negligence/wantonness under Alabama law. Attached to the six-page complaint are charges of discrimination filed with the EEOC by some—but not all—of the plaintiffs; all charges are supported by unsworn declarations signed under penalty of perjury. (*See generally* Doc. 1-1.)[2] While the plaintiffs' complaint asserts that discrimination based on national origin affected a wide assortment of conditions of their employment—"recruiting, hiring, training, pay, job assignments, leave, benefits, promotions and other actions" (Doc. 1, ¶ 17)—the charges filed with the EEOC[3] have but a singular focus—pay disparity (*see* Doc. 1-1 at 3 (¶¶ 5; 6), at 5

---

[2] Such EEOC charges/declarations have been filed by Plaintiffs Chelene Baker, Bridgette Crayton, Princeton Ealey, John Garrett, Portia Goldsmith, Donna Harris, Zaquesa S. Harris, Toriyana Shamaine Jowers, Shadreka Lambert, Abrian Marks, Trecia McGee, Niesha Morrisette, Sherika Orange, Flora Stabler, Tawanna Teamer, and Tremoyne Washington. Plaintiffs Latrice Bellard, Gwen Garrett, Joshua Mitchell, and Justin Morriss have not filed EEOC charges/declarations.

[3] While, "[t]ypically, in Rule 12 motions, the only materials a court may consider are the pleadings[, ] documents attached to a complaint are properly considered on a Rule 12 motion. Even if the documents are not attached to the complaint, if a document is central to the complaint and the contents of it are not in dispute, then even documents appended to a motion to dismiss can be considered." *Ezekiel v. Tift Cnty. Sch. Dist.*, No. 7:08–cv–127 (HL), 2010 WL 431977, at *4 (M.D. Ga. Feb. 1, 2010) (noting, there, "the EEOC Complaints are attached to the complaint and are proper matters for the court to consider as they are central to the complaint") (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n 2

(¶¶ 5; 6), at 7 (¶¶ 5; 6), at 9 (¶¶ 5; 6), at 11 (¶¶ 5; 6), at 13 (¶¶ 5; 6; 7), at 15 (¶ 5), at 17 (¶¶ 5; 6), at 19 (¶¶ 5; 6), at 21 (¶¶ 5; 6), at 26 (¶¶ 5; 6), at 28 (¶¶ 5; 6), at 30 (¶¶ 5; 6), at 32 (¶¶ 5; 6), at 34 (¶ 5) (all alleging that, because they are not of the same national origin as Abrahim Maghsoud, the owner, they are paid less, and that Mr. Maghsoud pays crew members of his national origin more); *see also id.* at 23-24, Decl. of Trecia McGee (McGee, a manager with twenty years experience, provides a much fuller factual account, but, like all other plaintiffs, the complaint she made to the EEOC focuses solely on pay disparity)).

## II.    Analysis

Because it is the Magistrate Judge's finding that the plaintiffs are barred from pursing two of their three claims, for relief under § 1981 and under Alabama law, those claims are addressed first.    The analysis then turns to their first claim, pursuant to Title VII.

### A.    Section 1981 Claim

"Section 1981 protects all persons, Caucasian and non-Caucasian[,]" from race-based discrimination.    *Ellison v. Chilton Cnty. Bd. of Educ.*, 894 F. Supp. 415, 419 (M.D. Ala. 1995); *Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1292 n.5 (11th Cir. 2002) (noting that the Supreme Court has decided that a Caucasian plaintiff may bring a claim of discrimination under § 1981).    Although the Supreme Court of the United States broadly has defined "race" discrimination under § 1981, § 1981's protections do not extend to discrimination based "solely on the place or nation of . . . origin."    *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *see Tippie v. Spacelabs Med., Inc.*, 180 Fed. App'x 51, 56 (11th Cir. Apr. 27, 2006) (per curiam) (holding that "[b]y its very terms, § 1981 applies to claims of

_____

(11th Cir. 1999)).

discrimination based on race, not national origin").

*Cyrus v. Hyundai Motor Mfg. Ala., LLC*, Civil Action No. 2:07cv144-ID, 2008 WL 1848796, at *6 n.6 (M.D. Ala. Apr. 24, 2008) (citations modified); *see also Eason v. Evans Cnty. Bd. of Comm'rs*, No. 6:13–cv–41, 2013 WL 5674497, at *3 (S.D. Ga. Oct. 17, 2013) ("By its text, § 1981 provides the same rights to contract to '[a]ll persons' as those enjoyed by 'white citizens.' The statute's plain language thus speaks only in terms of race and citizenship status. So while § 1981 protects against race and alienage discrimination, it does not extend to discrimination based on national origin . . . ." (citation omitted)).

It is abundantly clear from their complaint that the plaintiffs' claims are not founded on racial discrimination (or retaliation), but instead are based only on discrimination because of national origin. Although the complaint states that sixteen plaintiffs "filed charges of discrimination with the EEOC, alleging, among other things, discrimination based on National Origin" (Doc. 1, ¶ 6), and even though the boxes next to race, retaliation, and national origin are all checked on all sixteen complaints (*see* Doc. 1-1 at 2-34), the declarations providing the particulars supporting each plaintiff's charge, as well as the enumerated paragraphs of the complaint, **only** mention discrimination based on national origin (*compare id.*, *with* Doc. 1).[4] Thus, consistent with the cases discussed above, it is also abundantly clear that the plaintiffs cannot state "a separate and distinct cause of action under §

---

[4] In ten of the complaint's 26 paragraphs, national origin is mentioned eleven times (*see* ¶¶ 6, 9, 10, 11, 12, 13, 14, 15, 16, and 17). Race is not mentioned once.

1981 for national origin discrimination." *Short v. Mando Am. Corp.*, 805 F. Supp. 2d 1246, 1267 (M.D. Ala. 2011) (discussing *Bullard v. OMI Ga.*, 640 F.2d 632 (5th Cir. Unit B 1981).[5]

The plaintiffs' second claim for relief is accordingly due to be dismissed with prejudice.

## B.     Negligence/Wantonness Claim

The third claim, for negligent/wanton failure to train and/or supervise and/or monitor and/or investigate, is based solely on the defendant's alleged "duty to its employees to provide a workplace free of discrimination *under* Title VII and 42 U.S.C. § 1981." (Doc. 1, ¶ 22 (emphasis added).)  This claim is premised, quite clearly then, on employment discrimination prohibited by federal statutes instead of on an independently actionable Alabama tort.  "[E]very federal district court in Alabama" has recognized, however, that such a claim "must be dismissed [if] it is not based upon an independently actionable Alabama tort." *Burnett v. Harvard Drug*

---

[5]     *Bullard*—which is binding on this Court, *see Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982) (all Fifth Circuit Unit B decisions from any date are binding precedent in the Eleventh Circuit)—concerned a lawsuit brought solely pursuant to § 1981; the district court granted summary judgment, on the grounds that only a national origin discrimination claim was pled, *see* 640 F.3d at 633; and the Fifth Circuit reversed, holding, "[P]laintiffs do not charge only discrimination based on national origin.  In a separate paragraph of their complaint, *they allege* that they were discharged because of their race *and their affidavits support* a charge of racial discrimination equally as well as one of discrimination because of national origin[,]" *id.* at 634 (emphasis added); *see also Short*, 805 F. Supp. 2d at 1267 ("While Fifth Circuit noted in dicta that racial discrimination and national origin discrimination can be so closely related as to be nearly indistinguishable, it did not hold that there was a separate and distinct cause of action under § 1981 for national origin discrimination." (citing *Bullard*, 640 F.3d at 634)).  Here, by contrast, neither the allegations therein nor the declarations supporting the EEOC charges affixed to the complaint support a charge of racial discrimination.

*Group, LLC*, Civil Action No. CV–13–S–1620–NE, 2014 WL 223081, at *5 (N.D. Ala. Jan. 21, 2014).

In *Burnett*, similar to here, the "claim for negligent hiring, training, supervision, and retention [was] based entirely on the same alleged conduct that support[ed the] claims . . . under Title VII and 42 U.S.C. § 1981." *Id.* at *6. And the court held that because Burnett did "not allege any independent conduct that would support an Alabama tort law claim[, ] his negligent hiring, training, supervision, and retention claim must be dismissed." *Id.* (footnote omitted); *see also id.* (explaining this "requirement is not simply that plaintiff plead sufficient facts to support the negligent hiring, training, supervision, and retention claim itself. Instead, plaintiff must plead sufficient facts to support an underlying tort claim upon which the negligent hiring, training, supervision, and retention claim is based."); *see Rabb v. Georgia Pac., LLC*, No. CA 09–0420–C, 2010 WL 2985575, *16 (S.D. Ala. July 26, 2010) ("Because Alabama does not recognize a common-law tort for race discrimination in employment, this Court finds that Rabb cannot maintain an action for negligent supervision 'based upon conduct that is employment discrimination, but does not support a common-law tort.'" (quoting *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002) (in which the court granted summary judgment on a claim for negligent hiring, training, supervision, and retention in the context of a pregnancy discrimination claim, where "the plaintiff [failed to] establish that the allegedly incompetent employee committed a common-law, Alabama tort" (citing *Stevenson v. Precision Standard, Inc.*, 762 So.

2d 820, 824 (Ala. 1999) (in turn citing *Big B, Inc. v. Cottingham*, 634 So. 2d 999 (Ala. 1993)))))); *see also Guy v. Alabama Power Co.*, No. 2:13cv8–MHT, 2013 WL 3929858, *2 (M.D. Ala. July 29, 2013) ("[I]t is clear that the employee's wrongdoing must be based on state, and not federal, law. Otherwise, the tort of negligent or wanton hiring, training, and supervision could be a corridor through which federal laws prohibiting various types of conduct by employees could be incorporated into state law as a privately redressable requirement on employers to stop their employees from engaging in such conduct."); *Roberson v. BancorpSouth Bank, Inc.*, Civil Action No. 12–0669–WS–N, 2013 WL 3153755, at *4 (S.D. Ala. June 19, 2013) ("[T]he underlying conduct must constitute a common-law, Alabama tort . . . , not . . . a federal cause of action such as Title VII." (quoting *Short*, 805 F. Supp. 2d at 1277)).[6]

The plaintiffs' third claim for relief is accordingly due to be dismissed with prejudice.

## C.    Title VII Claim

Because "[n]o action alleging a violation of Title VII may be brought unless

---

[6]        *See also id.* at *4 n.4 (collecting cases, including: *Shuler v. Ingram & Assocs.*, 441 Fed. App'x 712, 721 (11th Cir. Sept. 29, 2011) (per curiam) ("wanton and reckless supervision and training claim fails as a matter of law because [plaintiffs] failed to establish that [defendant's] employees committed any tort under Alabama law"); *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1288-89 (N.D. Ala. 2013) ("not just any 'incompetency' suffices to give rise to a cause of action for so-called negligent hiring, training, and supervision liability. Rather, Plaintiffs must prove that an allegedly incompetent employee committed a state law tort."); *Williams v. Daiichi Sankyo, Inc.*, 2012 WL 3627765, at *3 (N.D. Ala. Aug. 21, 2012) ("The plaintiff must allege underlying wrongful conduct that is an Alabama common law tort to support a claim of wanton supervision. . . . [U]nder Alabama law, a company cannot be independently guilty of negligent or wanton hiring, training, or supervising in the absence of some tort committed by its employee against the plaintiffs." (internal citations and quotation marks omitted))).

the alleged discrimination has been made the subject of a timely-filed EEOC charge[,]" *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1332 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 388 F.3d 1304 (11th Cir. 2000), the undersigned must address the extent to which the plaintiffs have administratively exhausted their Title VII claims before discussing the sufficiency of their Title VII allegations.

### 1. Exhaustion

The exhaustion requirement is jurisdictional. *See, e.g., Theodore v. City of Charlotte-Goins*, No. 3:12–cv–00809–GCM, 2013 WL 5934133, at *3-4 (W.D.N.C. Nov. 1, 2013) ("When a plaintiff fails to exhaust administrative remedies concerning a Title VII claim, it deprives the federal courts of subject matter jurisdiction over the claim." (citation omitted)). Its "purpose" is to give the EEOC "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)); *accord Lambert v. Alabama Dep't of Youth Servs.*, 150 Fed. App'x 990, 993 (11th Cir. Oct. 21, 2005) (per curiam); *Jerome v. Marriott Residence Inn Barcelo Crestline/AIG*, 211 Fed. App'x 844, 846-47 (11th Cir. Dec. 4, 2006) (per curiam). Therefore, the plaintiffs' "judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of [their] charge[s] of discrimination[,]" *Gregory*, 355 F.3d at 1280 (quoting *Alexander*, 207 F.3d at 1332), and the claims they present to this Court "are allowed if they 'amplify, clarify, or more clearly focus' the allegations in

the EEOC complaint[s]"; however, "allegations of new acts of discrimination are inappropriate[,]" *id.* at 1279-80 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (further noting, "The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation.")); *see also Nichols v. Security Eng'rs, Inc.*, Civil Action No. 08–0616–KD–M, 2009 WL 3756997, at *9-10 (S.D. Ala. Nov. 9, 2009) (A Title VII action "may be based not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." (quoting *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000) (in turn quoting *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)) (internal quotation marks omitted)))); *accord Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).[7]

---

[7]    *See also Ezekiel*, 2010 WL 431977, at *5 ("If there were a claim for disparate pay in the EEOC Complaints, there should have been more general allegations about discrimination over a period of time involving the disparate treatment of [defendant's] employees, rather than specific language regarding the hiring for [a particular] position.    It is difficult to see in what way a disparate payment claim would grow out of allegations specific to the failure to promote claims.    To hold that a disparate pay claim grows out of failure to promote claims would be to determine that the simple act of raising ***one kind of discrimination claim*** with the EEOC would allow plaintiffs to file ***all manner of discrimination claims***, no matter how remote they may be factually from the initial claim, in the district court.    This is not acceptable." (emphasis added)); *compare id., with Theodore*, 2013 WL 5934133, at *3-4 (noting four categories of procedurally-barred claims as recognized by the Fourth Circuit, including (1) ***basis of discrimination*** ("[A] claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex."); and (2) ***type of discrimination*** ("A claim will also typically be barred

Here, the defendant argues, "Plaintiffs have not administratively exhausted anything other than a claim of wage discrimination before the EEOC." (Doc. 4 at 6.) In response, the plaintiffs contend their "EEOC charges alleged discrimination based on national origin" and that "[t]he nature of the complaint was well established at the EEOC[,]" and then launch into a discussion in which they defend against allegations concerning comparators. (Doc. 11 at 4; *see id.* ("The Defendant complains[ ] that the comparators were 'unknown' and that the investigation of the evidence of comparators could not have 'grown' out of the EEOC investigation. Not true.").) This response, however, fails to address the defendant's argument concerning the non-wage allegations made in the complaint (*see* Doc. 1, ¶¶ 10, 17 (discussing preferential promotions, advancements, and other conditions of employment on the basis of national origin and that, in addition to pay, national origin affected "recruiting, hiring, training, . . . job assignments, leave, benefits, promotions and other actions concerning the conditions of work")). *Cf. Stoneman v. ASR Restoration, Inc.*, Civil Action No. 3:11CV855–HEH, 2012 WL 1656510, at *3 (E.D. Va. May 10, 2012) ("A claim will also typically be barred if the administrative charge alleges one type of discrimination and the claim encompasses another type. For example, a plaintiff may not allege failure to promote in his or her EEOC charge only, and then allege discrimination in pay and benefits before the Court.").

---

if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits.") (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005))).

Despite the plaintiffs' failure to directly defend against the defendant's assertion they failed to exhaust claims of discrimination other than those related to pay, the undersigned will nevertheless examine the facts alleged in the plaintiffs' EEOC charges[8] to determine whether the broader scope of workplace discrimination alleged in their complaint could result from an "EEOC investigation which can reasonably be expected to grow out of [their] charge[s] of discrimination."[9] *Gregory*, 355 F.3d at 1280 (holding that a plaintiff's failure to check "retaliation" on an EEOC charge did not mean she failed to exhaust that claim where she alleged facts in her charge that reasonably encompassed a claim for retaliation); *see Hillemann v. University of Cent. Fla.*, 167 Fed. App'x 747, 749 (11th Cir. Jan. 18, 2006) (per curiam) ("[T]he facts in [the *Gregory* plaintiff's] EEOC charge indicated she was fired after complaining about race and gender discrimination, which reasonably would lead to an EEOC investigation of retaliation."); *but see Jerome*, 211 Fed. App'x at 846-47 (in which plaintiff circled "wages" in an the EEOC charge questionnaire but, when asked to explain the discriminatory actions of his employer, "complained only of being passed over for a promotion[,]" the Eleventh Circuit distinguished *Gregory*, and held the charge "fell far short of putting the EEOC on notice that Jerome was

---

[8]      "The 'crucial element of a charge of discrimination is the factual statement contained therein.'"      *Vinson v. Koch Foods of Ala., LLC*, No. 2:12–cv–1088–MEF, 2013 WL 5441969, at *10 (M.D. Ala. Sept. 27, 2013) (quoting *Sanchez*, 431 F.2d at 462).

[9]      *Cf. Howard v. Semco Duct & Acoustical Prods., Inc.*, Civil Action No. 7:12cv00452, 2013 WL 4451117, at *3 (W.D. Va. Aug. 16, 2013) ("No part of Howard's EEOC filings gives any hint of some broader pattern of workplace misconduct or that Howard thought any other conduct was unlawful or inappropriate. . . . Accordingly, the court grants partial summary judgment on that narrow issue.").

also claiming that [his employer] paid its white employees less than its back employees"; thus, "[b]ecause Jerome failed to inform the EEOC of such a [disparate pay] claim, the district court correctly granted the defendant's motion for judgment on the pleadings"); *Lambert*, 150 Fed. App'x at 993-94 (affirming decision to grant motion to dismiss on failure to exhaust—"Lambert's claim to the EEOC, that he was suspended for being disruptive and transferred to a less desirable shift on the basis of his race and gender, would not reasonably lead the EEOC to investigate whether Lambert was being forced to wax and strip floors or being denied sick leave on the basis of his race and gender. These allegations do not clarify, amplify, or more clearly focus the allegations in the original EEOC complaint, but rather are allegations of new acts of discrimination that this Court has held are inappropriate." (citing *Gregory*, 355 F.3d at 1279-80)).[10]

Examination of the facts supporting the plaintiffs' EEOC charges—presented through declarations attached to the charges—reveals that the sole kind of (or basis

---

[10]    *See also Rossi v. Fulton Cnty., Ga.*, Civil Action File No. 1:10–CV–4254–RWS–AJB, 2013 WL 1213168, at *14 (N.D. Ga. Feb. 4, 2013) (failure-to-promote claim not "like or related" to allegations in an EEOC charge where "[n]owhere in the entire charge [did] Plaintiff hint that she had applied for promotions or even intended to, much less that she had been denied promotions"; as a result, court found such a claim "would not have grown out of Plaintiff's lengthy and highly detailed charge of discrimination complaining exclusively about her treatment in her Property Appraiser position"); *Vinson*, 2013 WL 5441969, at *10 ("[T]he facts in her EEOC charge make no mention of discriminatory pay, failure to promote, or retaliation, but instead focus on the January 5, 2012 disciplinary action and its consequences. Therefore, Vinson's Title VII national origin claim cannot be premised on claims for discriminatory pay, failure to promote, or retaliation because these allegations cannot reasonably be expected to grow out of her EEOC [charge]. As a result, Vinson is procedurally barred from pursuing her Title VII national origin claim on any basis other than her wrongful termination." (citation omitted)).

for the) discrimination alleged is on account of national origin, and the sole type of discrimination (or the manner in which the plaintiffs were allegedly discriminated against) is how much they were paid (allegedly less than other employees of the same national origin as the owner, Mr. Maghsoud). In this regard, the facts supporting Plaintiff McGee's EEOC charge are telling. An experienced manager, who in fact declares she served as General Manager for Mr. Maghsoud (*see* Doc. 1-1 at 23, ¶ 11), McGee conceivably could have alleged facts to the EEOC to support claims for broader discriminatory practices—promotions, advancements, recruiting, hiring, training, job assignments, leave, benefits, and other unnamed conditions of work, as alleged in the complaint filed in this Court. Instead, even in the course of explaining that she trained employees, the facts she provides focus on disparate pay. (*See, e.g., id.*, ¶ 6 ("I have trained many people who are of different national origin than myself and yet they are paid the same as I am paid even though they have less time and experience than I have. . . ."), ¶ 10 ("I have shown the employees I am training how to do their job [sic] and they are paid as much or more than I am paid."), ¶ 17 ("I have seen the payroll and Mr. Maghsoud pay [sic] people of his own national origin much ore than other people.").)

Thus, the scope of the EEOC investigation that can reasonably be expected to grow out of the facts contained in the plaintiffs' charges is confined to one **type of** discrimination: disparate pay ("the how") **on the basis of** national origin ("the why"). *See Chanda*, 234 F.3d at 1225; *Alexander*, 207 F.3d at 1332; *Gregory*, 355 F.3d at 1280. Because the plaintiffs' EEOC charges presented such a narrow issue,

they have not exhausted Title VII claims alleging a broader pattern of workplace discrimination—by the defendant on the basis of national origin—and thus, they cannot now expand "the how" (to include such means as recruiting, hiring, training, job assignments, leave, and benefits). *See Jerome*, 211 Fed. App'x at 846-47; *Lambert*, 150 Fed. App'x at 993-94; *Rossi*, 2013 WL 1213168, at *14; *Vinson*, 2013 WL 5441969, at *10.

A separate reason also supports a narrow reading of the EEOC charges. They were not prepared by laypersons, but appear to be prepared by Mr. Hannan, the plaintiffs' attorney. (*See, e.g.,* Doc. 1-1 at 3, Decl. of Chelene Baker, ¶ 9 (identifying Mr. Hannan as her attorney and providing contact information for Mr. Hannan).) As the Eleventh Circuit and other district courts in this Circuit have explicitly noted, and this Court has previously recognized, "[t]hose cases that have found claims growing out of an EEOC charge have emphasized that the plaintiff was proceeding *pro se*." *Rossi*, 2013 WL 1213168, at *14 n.10 (citing *Gregory*, 355 F.3d at 1280; *Jerome*, 211 Fed. App'x at 846; *Richardson v. JM Smith Corp.*, 473 F. Supp. 2d 1317, 1328 (M.D. Ga. 2007) ("Although we liberally construe EEOC charges that are prepared without the assistance of counsel, a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." (internal quotation marks and citations omitted))); *accord Green v. Elixir Indus., Inc.*, 152 Fed. App'x 838, 840 (11th Cir. Oct. 11, 2005) (per curiam); *Patterson v. WMW, Inc.*, Civil Action File No. 1:11–CV–3172–WSD–SSC, 2012 WL 3261290, at *6 n.11 (N.D. Ga. June 15, 2012); *see also*

*Matthews v. City of Mobile*, Civil Action No. 12–00353–KD–N, 2013 WL 5883833, at *7 & n.8 (S.D. Ala. Oct. 31, 2013). "Thus, if an attorney drafts the EEOC charge, the charge need not be given a liberal construction." *Rossi*, 2013 WL 1213168, at *14 n.10 (citing *Tarrance v. Montgomery Cnty. Bd. of Educ.*, 157 F. Supp. 2d 1261, 1265-66 (M.D. Ala. 2001)).

### 2. Sufficiency of the Complaint

Having determined that disparate pay allegations are the sum of the plaintiffs' Title VII allegations to have been administratively exhausted, the undersigned now turns to the sufficiency of those allegations.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. Such a motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true, *see, e.g., Gaubert*, 499 U.S. at 327; *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990), and all factual allegations, are to be construed, moreover, in the light most favorable to the plaintiff, *see, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598 (1989); *see also Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (same).

Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See*

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) ("Under [Rule] 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.").

Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557); *compare Speaker*, 623 F.3d at 1381 ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite [] statutory elements in conclusory fashion. Rather, his allegations must proffer **enough factual content** to 'raise a right to relief above the speculative level.'" (emphasis added)), *with Robinson v. Correctional Med. Assocs., Inc.*, Civil Action No. 1:09–cv–01509–JOF, 2010 WL 2499994, at *2 (N.D. Ga. June 15, 2010) ("Factual allegations in a complaint **need not be detailed but** 'must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting *Twombly*, 550 U.S. at 555 (internal citations and emphasis omitted and added))).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The

17

plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. . . .

[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

*Iqbal*, 556 U.S. at 678-79 (internal citations and quotation marks omitted); *compare id*. at 680 (a plaintiff must nudge his claims "across the line from conceivable to plausible."), *with Patel v. Georgia Dep't BHDD*, 485 Fed. App'x 982, 983 (11th Cir. Aug. 8, 2012) (per curiam) ("In order to survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face,' rather than merely conceivable." (quoting *Twombly*, 550 U.S. at 570)).

Applied to a Title VII claim, *Iqbal* and *Twombly* require more than a mere recitation of the components of a *prima facie* case; a plaintiff may not merely allege, for example, that other employees similarly situated but of a different national origin received more favorable treatment.[11] *See Bradford v. Regions Fin. Corp.*,

_____

[11] "Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas prima facie* case, it must provide enough factual matter (taken as true) to suggest intentional race discrimination." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (citations and quotation marks omitted). While a *prima facie* case **need not be proven** at the pleading stage, a plaintiff

is still required to properly plead a cause of action pursuant to *Twombly* and *Iqbal*. Which, as courts have noted, require more than just a recitation of the [final] prong of a Title VII *prima facie* case, which is what Plaintiff has

Civil Action No. 2:13–CV–00642–KOB, 2013 WL 3381375, at *2 (N.D. Ala. July 8, 2013) ("Conclusory allegations that an employer treated an employee differently than similarly situated employees of another race 'epitomize[ ] speculation and therefore [do] not amount to a short and plain statement of [the] claim under Rule 8(a).'" (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008))).

Instead, a plaintiff must provide enough factual content, explaining how the disparate treatment occurred, to give rise to an inference of discrimination and, therefore, nudge the discrimination claim across the line from conceivable to plausible. *Cf. id.* ("The facts alleged in the complaint must both give fair notice to the defendant of the basis for the plaintiff's claims, and raise the plaintiff's right to

---

done in this case. She has simply stated that there were other employees that were similarly situated, outside her protected class, who received more favorable treatment. Such a recitation, without any **allegations** of **specific facts** to **explain how** the disparate treatment occurred to even give rise to an inference of discrimination, is insufficient.

*Veale v. Florida Dep't of Health*, No. 2:13–cv–77–FtM–38UAM, 2013 WL 5703577, at *5 (M.D. Fla. July 29, 2013) (emphasis added); *see also Henderson v. JP Morgan Chase Bank, N.A.*, 436 Fed. App'x 935, 937 (11th Cir. Aug. 4, 2011) (per curiam) ("A complaint in an employment discrimination case need not contain specific facts **establishing** a *prima facie* case under the evidentiary framework for such cases to survive a motion to dismiss. But complaints alleging discrimination still must meet the 'plausibility standard' of *Twombly* and *Iqbal*." (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010) (characterized as noting that "to state a hostile work environment claim post-*Iqbal*, employee 'was **required to allege**' five *prima facie* elements" (emphasis added)))). In *Henderson*, for example, dismissal was affirmed because the complaint lacked "'sufficient factual matter' to support a reasonable inference that Chase engaged in racial discrimination against Henderson in relation to her loan." 436 Fed. App'x at 937 (further noting, "She could have met this standard by **alleging facts showing** that similarly-situated loan applicants outside her racial class were offered more favorable loan terms." (emphasis added)).

relief above the speculative level." (citing *Davis*, 516 F.3d at 974; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (in which the Supreme Court determined a Title VII/ADEA complaint "easily satisfie[d] the requirements of Rule 8(a) because it [gave] fair notice of the basis for [the] claims" by alleging not only termination "on account of [ ] national origin in violation of Title VII and on account of [ ] age in violation of the ADEA[,]" but also because the "complaint detailed the events leading to [the] termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with [the] termination[,]" which all served to provide "fair notice of what [the] claims [were] and the grounds upon which they rest[ed]"))).

Furthermore, factual allegations must not be merely formulaic recitations of elements of a discrimination claim, but must instead provide enough content to suggest there was intentional discrimination based on a protected trait. If not, the allegations are merely conclusory and not assumed to be true, and the complaint is subject to dismissal. *See, e.g., Uppal v. Hospital Corp. of Am.*, No. 8:09–cv–634–T–33TBM, 2011 WL 2631869, at *3 (M.D. Fla. July 5, 2011) ("District courts frequently dismiss discrimination claims when the allegations of disparate treatment are nothing more than legal conclusions unsupported by any facts." (collecting cases)), *aff'd* 482 Fed. App'x 394 (11th Cir. June 13, 2012) (per curiam).

Moreover, there must be enough facts (taken as true) to make discrimination a more likely explanation. For example, in *Eason*, in support of a gender discrimination claim, the female plaintiff merely alleged (1) that she was

terminated; (2) that her employer, the County, accommodated male employees; and (3) that she was replaced by a more severely disabled/limited male, accommodated by the County. 2013 WL 5674497, at *2. Eason's "allegation that the County accommodated disabled males"—similar to plaintiffs' allegations here that "persons of different national origins" were treated more favorably—"is nothing more than a bare assertion that amounts to a 'formulaic recitation of the elements of a constitutional discrimination claim,' namely, that Defendants treated males similarly situated to Eason differently than her. 'As such, the allegation [is] conclusory and not entitled to be assumed true.'" *Id.* (quoting *Iqbal*, 556 U.S. at 681). Moreover, allegations like Eason's and the plaintiffs'—cloaked as factual but actually merely formulaic and conclusory—will not nudge a claim across the line from conceivable to plausible. *See id.* ("Eason's statement that Defendants replaced her with a man who required light duty work restrictions, although factual, also does not save her complaint. While that statement is 'consistent with [the County's] liability,' it is insufficient to push Eason's claims over the possible-plausible divide." (quoting *Iqbal*, 556 U.S. at 678)); *see also id.* at *3 ("But like the parallel course of conduct by two competitors in *Twombly* that did not make an unlawful, anticompetitive agreement a more likely explanation, hiring a man after terminating a woman does not, absent more, make discrimination a more likely explanation.").

As the undersigned has found, the broadly pleaded Title VII claim is limited, because of the plaintiffs' failure to exhaust, to only assertions of discrimination by

disparate pay because of national origin. Had claims broader than those for disparate pay been exhausted with the EEOC, and thus the Court was faced with a broader alleged scheme of workplace discrimination because of national origin, the Title VII claim would be subject to dismissal—as to the non-exhausted Title VII non-disparate pay claims, there is simply not "enough factual content to raise a right to relief above the speculative level." *Speaker*, 623 F.3d at 1381. Because, however, the exhaustion requirement has focused the Title VII claim to one for disparate pay on the basis of national origin, the Court (and the defendant) can examine the declarations in support of the EEOC charges affixed to the complaint.[12] The facts therein (including the applicable plaintiffs' approximate dates of hire, positions, and rates of pay) arguably "give fair notice to the defendant of the basis for the plaintiff[s'] claims [for disparate pay only], and raise the plaintiff[s'] right to relief [for that claim alone] above the speculative level." *Bradford*, 2013 WL 3381375, at *2.[13] Thus, although the question is a close one, the Title VII disparate

---

[12]    *See, e.g., Ezekiel*, 2010 WL 431977, at *4 ("the EEOC Complaints are attached to the complaint and are proper matters for the court to consider as they are central to the complaint"); *Snyder v. Baxter Healthcare, Inc.*, 393 Fed. App'x 905, 909 (3d Cir. Sept. 14, 2010) ("Upon review of the Complaint and the EEOC Charge, we agree with the District Court that Snyder has failed to allege sufficient facts to withstand *Iqbal*'s and *Twombly*'s plausibility standard."); *compare Johnson v. City of Chicago (Fleet Mgmt.)*, No. 13–cv–04098, 2014 WL 1202960, at *1 (N.D. Ill. Mar. 18, 2014) ("The Court may consider the allegations stated by Johnson in his EEOC Charge in assessing its sufficiency."), *with Ewing v. Fresh Ideas Mgmt. LLC*, No. 4:07CV1068 CEJ, 2007 WL 4210062, at *2 (E.D. Mo. Nov. 27, 2007) ("Because plaintiff's EEOC charge was provided to the Court as a supplement to the complaint, the allegations therein are incorporated into the complaint.") (both citing FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")).

[13]    A failure to identify specific comparators is discussed several times in the

pay claim survives a motion to dismiss. Practically speaking, however, given that two of the three counts of the complaint are due to be dismissed with prejudice, along with four of the twenty plaintiffs—those not filing EEOC charges—should this report and recommendation be adopted as the opinion of the Court, the undersigned **RECOMMENDS** an amended complaint (incorporating the factual content of the EEOC charges into numbered paragraphs, and conforming with Rules 8 and 10) be filed.

### D. Motion to Sever

The defendant contends that should the plaintiffs' complaint be dismissed, and if they are allowed to file an amended complaint, their claims, joined in this lawsuit pursuant to Rule 20(a)(1), should be severed into separate lawsuits. This request has no merit and should be denied.

---

motion to dismiss. And the plaintiffs go to great lengths in their response to document alleged comparators. But a failure to identify specific comparators in a complaint does not necessarily mean it should be dismissed. *See, e.g., Veale*, 2013 WL 570357, at *5 n.3 ("Defendant argues that because Plaintiff has failed to identify any specific employees in her Amended Complaint that engaged in nearly identical activities as Veale but were outside of her protected class, the Complaint should be dismissed. It does not appear that Plaintiff is required to name specific employees at the pleading stage." (citing *Turner v. Florida Prepaid College Bd.*, 522 Fed. App'x 829, 832 (11th Cir. July 2, 2013) (per curiam) ("Even if a plaintiff cannot point to a similarly situated comparator employee who was treated more favorably, however, she may in some cases create a 'triable issue concerning the employer's discriminatory intent' by showing a 'convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011))); *Hubbard v. Meritage Homes of Fla., Inc.*, 520 Fed. App'x 859, 863 (11th Cir. May 30, 2013) (per curiam) ("[A] plaintiff alleging pregnancy discrimination 'need not identify specific non-pregnant individuals treated differently from her, if the employer violated its own policy in terminating her.'" (quoting *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1321 (11th Cir. 2000))))).

"Parties may properly join together to bring a single action only if their claims arise out of 'the same transaction, occurrence, or series of transactions or occurrences.'" *Cano-Diaz v. City of Alabaster, Ala.*, No. 2:11–CV–3448–VEH, 2012 WL 2924006, at *3 (N.D. Ala. July 17, 2012) (quoting FED. R. CIV. P. 20(a)). "Transaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id.* (quoting *Alexander*, 207 F.3d at 1323 (in which the Eleventh Circuit looked to Rule 13(a), governing compulsory counterclaims, to determine what constitutes a transaction or occurrence for the purposes of Rule 20(a))); *see also Lee v. Cook Cnty., Ill.*, 635 F.3d 969, 971 (7th Cir. 2011) ("Multiple plaintiffs are free to join their claims in a single suit when '*any* question of law or fact common to all plaintiffs will arise in the action.' The common question need not predominate; that's a requirement for class actions, not for permissive joinder. Whether the Cook County prison system discriminates against black employees when making promotions is a question common to all plaintiffs' claims." (quoting FED. R. CIV. P. 20(a)(1)(B)) (emphasis in original)).[14]

---

[14] "In causes of action involving discrimination, Title VII or otherwise, courts look to whether the discrimination took place at roughly the same time, if it involved the same people, whether there is a relationship between the discriminatory action, whether the discriminatory action involved the same supervisor or occurred within the same department, and whether there is a geographic proximity between the discriminatory actions. . . . On the other hand, . . . allegations of a common discriminatory policy or practice, or a company-wide policy of discrimination, could tilt the balance in favor of joinder despite those other factors which might favor severance.

The plaintiffs' allegation to survive scrutiny is, succinctly, that their employer, through its owner, Abrahim Maghsoud, pays them less than others similarly situated who are of a different national origin than them but the same national origin as Mr. Maghsoud. Such an allegation, although asserted by multiple plaintiffs, is properly understood as asserting that it is the defendant's pattern or practice to unlawfully favor employees of the same national as Mr. Maghsoud. That allegation may therefore be presented in a single lawsuit pursuant to Rule 20(a)(1). *See, e.g., Alexander*, 207 F.3d at 1323 ("Several courts have concluded that allegations of a 'pattern or practice' of discrimination may describe such logically related events and satisfy the same transaction requirement."); see also id. (discussing "perhaps the leading case on the joinder of Title VII plaintiffs under Rule 20," *Moseley v. General Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974), in which "ten black plaintiffs alleged that General Motors had a general policy of discrimination against black employees. The trial court had ordered the severance of the claims, concluding that the allegations presented a variety of issues and had little relationship to one another. The Eighth Circuit reversed the trial court's order to sever plaintiffs' claims, concluding that, based on its reading of Rule 20, the General Motors policy 'purportedly designed to discriminate against blacks in employment . . . [arose] out of the same series of

*Banks v. McHugh*, Civil No. 11–00798 LEK–KSC, 2012 WL 4715162, at *9 (D. Haw. Sept. 28, 2012) (quoting *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1087 (C.D. Cal. 2002) (in turn quoting *Byers v. Illinois State Police*, No. 99–C8105, 2000 WL 1808558, at *4 (N.D. Ill. Dec. 6, 2000))).

transactions and occurrences.' . . ." (citing *id.* at 1332; quoting *id.* at 1334)).

## III.    Conclusion

For all the reasons explained above, it is **RECOMMENDED** that the motion (Doc. 4) be **GRANTED IN PART** and **DENIED IN PART**; specifically, it is **RECOMMENDED**:

1.      That the second and third claims for relief (pursuant to 42 U.S.C. § 1981 and for negligence/wantonness, under Alabama law, respectively) be **DISMISSED with PREJUDICE**.   Thus, the claims of Plaintiffs Latrice Bellard, Gwen Garrett, Joshua Mitchell, and Justin Morriss, only asserted under § 1981 and Alabama law (*see* Doc. 1, ¶ 6), are due to be **DISMISSED**;

2.      That, as to the first claim for relief (for national origin discrimination, pursuant to Title VII), the Court find the plaintiffs have not administratively exhausted any claims other than those for disparate pay, which precludes jurisdiction over those (the non-exhausted) claims;

3.      That, also as to the first claim for relief, the motion to dismiss be **DENIED**, but that the Court order the remaining plaintiffs—those who have filed an EEOC charge—to file an amended complaint asserting a claim under Title VII that complies with Rules 8 and 10, as explained herein, for disparate pay (the alleged discriminatory action) because of national origin (the alleged discriminatory basis); and

4.      That the defendant's alternative motion to sever be **DENIED**.

## IV. Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 15th day of April, 2014.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**